Johnson, J.
I fully concur in the foregoing opinion of Judge Mcllvaine. The difficult nature of the question involved, the importance of the case, and the effect of the opinion of the majority on the character and value of property in the state, represented by corporate shares, induce me to state briefly one or two of the reasons for my dissent.
Under the liberal policy of past state legislation, authorizing-corporations for almost every kind of business, having its inception and a large development under the constitution of 1802,. and a still larger one under that of 1851, a vast amount of the individual property of the state is represented by shares in such corporations.
Any legislation or any decision which materially affects the character and value of this species of property, heretofore so-liberally fostered and encouraged, is a matter of great public concern.
The constitutional provision under consideration was intended. to remedy an existing evil, and to provide an additional security to creditors. Prior to its adoption, there was no individual responsibility (except by legislative enactment in a few instances), of those who had the management of the corporate business. 'Hence the provision that: “ Hues from corporations shall be secured by such individual liability of the stockholders and other means as may be prescribed by law; but in all cases each stoelcholder shall be liable over and above the stock by him or her owned, and any amount unpaid thereon to a further sum, at least equal in amount of such stock.”
One of the peculiar and valuable features of corporate shares, arises out of their transferability without the vexatious restraints imposed upon the sale and transfer of partnership or other common property.
Prior to the adoption of this provision, it was well settled, that stockholders could dispose of their interest in the corporation by a sale of their shares, as fully as they could any other *690 species of property, and by a transfer cease to be stockholders The transferee became a stockholder and the owner of the stock, charged with all duties and liabilities as such. He was invested with all the powers and rights, and was subject to all the responsibilities as if lie had been an original subscriber.
This alienable quality of corporate shares added greatly to their value. Of course, a sale to hinder, delay, or defraud creditors, did not release the assignor, any more than a like sale of other property; but a bona fide sale was just as valid as a like sale of other property.
The scope and intention of the constitutional provision and the statute were simply to further secure creditors when the assets of the corporation were insufficient to pay all debts, by imposing a liability on the owners of the shares of stock, at least, equal to its par value. The liability at common law was to lose the investment. This loss fell on the owner of the stock, not on the assignor’. In addition to this loss, the object of the statute, as well as this constitutional provision, was to impose upon the same person an individual liability.
It is a misnomer to call one a “ stockholder ” and the “ owner of stocks,” and so liable to assessment, who has long since ceased to he such by a bona fide sale and transfer. The transferees are such stockholders and owners in fact and in law, and are entitled to represent this stock in all proceedings of the corporation.
The statute containing this liability clause, clearly shows, in other clauses on the same subject, that this is its true meaning.
The corporators, their associates, meoessors and assigns, are clothed with all corporate powers, and as a legal consequence, are charged with all the duties and liabilities imposed on owners of stock. The obligations and duties of stockholders go hand in hand with and are inseparable from their rights and privileges.
Section 7 of this act gives a statutory remedy for the collection of unpaid stock, and makes the transferee or assignee liable.
In case of a sale, the assignee by that section is the stockholder and owner, made liable in case the stock does not sell *691 for sufficient to pay the amount due. This unpaid amount on stock is the same debt mentioned in the .constitution and in the liability clause of this statute as unpaid stock, and the person who is liable under the one as an owner, is liable under the other. Under section Y, it is the assignee in case of a sale that is liable as the owner, and for equally strong reasons, the same meaning should be given to the liability clause, both being used in reference to the same subject matters.
Again, sound principles of justice would dictate, that those who are in law the stockholders for the purpose of receiving' dividends and enjoying the rights incidental to ownership, should be liable to pay the losses, when by their mismanagement, fraud or from other causes, the creditors go unpaid.
This statutory liability is collateral and conditional. It can only be resorted to in equity, when the assets of the corporation prove insufficient. Wright v. McCormack, 17 Ohio St. 86; Umstead v. Buskirk, 17 Ohio St. 113.
.Being collateral and conditional, no primary liability attaches, or can attach, when the debt is created. No liability attaches, nor does any right of action accrue to creditors, until the condition happens that fixes the liability. To hold that this liability attaches to those who are stockholders when the debt is contracted, and that in case of a transfer the creditor must first exhaust the assignee when the contingency arises, presents an anomaly. It compels the creditor to resort to a stranger to his contract before he can pursue the man he trusted.
Again, if the assignor is liable in case of default of his assignee, he is guarantor of the solvency of the latter, when the time arrives to resort to the stockholders. He becomes liable for an indefinite period for the conduct of stockholders over whom he has no control.
Much stress is laid upon the assumed, not actual, fact that every creditor looks to the stockholders when he trusts the corporation. Admit that this is so, yet ho also is presumed to know, that each stockholder has the right at any time to retire, and it may be properly said, he trusts the corporation, subject to this right of transfer.
*692 If such a contingent liability is to hang over • a stockholder for an indefinite period after he has parted with his stock and lost his power to control, no prudent man will care to invest in such shares.
If, on the other hand, we apply the same rules that govern the alienation of other property, and that governed the sale and transfer of stock prior to this provision of the organic law, we preserve the harmony of the law relating to sales of all other property.
For these and other reasons that I have not time to write out, I dissent from the opinion of the majority. ,